Filed 12/28/23  P. v. Schweitzer CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SCOTT ALLEN SCHWEITZER,<br><br>    Defendant and Appellant. | C096958<br><br>(Super. Ct. No. SCCRCRF20161304 & SCCRCRF20171251 ) |

Defendant Scott Allen Schweitzer was sentenced to 15 years in prison in 2018 after pleading no contest or guilty to various crimes, including three counts of assault with two great bodily injury enhancements, one count of failure to appear, and two counts of possession of drugs, alcohol, or controlled substances while in prison.  On remand in 2022 from a previous appeal, the trial court denied defendant's petition for mental health diversion under Penal Code section 1001.36 ("the 2022 version of section 1001.36"), concluding his diagnosed post-traumatic stress disorder (PTSD) was not a significant

1

factor in the commission of the offenses.  (All further undesignated section references are to the Penal Code.)

In January 2023, an amendment to section 1001.36 took effect and created a presumption that a defendant's mental disorder was a significant factor in the defendant's commission of the offenses.  (§ 1001.36, subd. (b)(2) ("the 2023 version of section 1001.36"); *People v. Doron* (2023) 95 Cal.App.5th 1, 8 (*Doron*).)  To rebut that presumption, there must be clear and convincing evidence that the disorder was not a motivating, causal, or contributing factor to the defendant's involvement in the alleged offense.  (§ 1001.36, subd. (b)(2); *Doron,* at p. 8.)

Defendant contends we should reverse and remand for the trial court to reconsider his application for diversion under the 2023 version of section 1001.36.  Alternatively, he contends the trial court abused its discretion in denying his petition under the 2022 version of section 1001.36.  We agree with defendant's primary argument and need not address the alternative.  We reverse and remand for the trial court to consider defendant's application under the 2023 version of section 1001.36.

FACTUAL AND PROCEDURAL BACKGROUND

We summarize the factual and procedural background from our opinion in defendant's previous appeal, *People v. Schweitzer* (Oct. 13, 2020, C086895) [nonpub. opn.] (*Schweitzer*), the record of which was incorporated by reference in this appeal at defendant's request.

"In a plea proceeding, defendant . . . [pled] no contest or guilty to assault with a deadly weapon with a great bodily injury enhancement ([]§§ 245, subd. (a)(1), 12022.7, subd. (a)), and two counts of brandishing a deadly weapon (§ 417, subd. (a)(1)).  In a subsequent plea proceeding, he [pled] guilty to two counts of assault by means likely to produce great bodily injury (§ 245, subd. (a)(4)), possession of a controlled substance in jail (§ 4573.6), two counts of possession of alcohol in jail (§ 4573.8), felony failure to appear (§ 1320, subd. (b)), five counts of resisting an officer (§ 148, subd. (a)(1)), battery

2

(§ 242), possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)), [and] misdemeanor failure to appear (§ 1320, subd. (a)), and [he] admitted great bodily injury and strike allegations (§§ 12022.7, subd. (a), 1170.12, subds. (a)-(d), 667, subds. (b)-(i)).” (*Schweitzer, supra,* C086895.) Defendant was sentenced to 15 years in prison. (*Ibid.*)

Defendant appealed to this court, contending his conviction should be conditionally reversed and the matter remanded to allow proceedings under the recently enacted section 1001.36 pretrial mental health diversion program. (*Schweitzer, supra*, C086895.) A panel of this court affirmed the conviction, but the California Supreme Court transferred the matter back given its decision in *People v. Frahs* (2020) 9 Cal.5th 618). (*Schweitzer, supra*, C086895.) The panel then conditionally reversed the judgment and remanded it back to the trial court for an eligibility determination under section 1001.36. (*Ibid.*)

On April 12, 2022, defendant filed a petition in the trial court for section 1001.36 diversion. In support of the petition, defendant provided a mental health assessment prepared by licensed professional clinical counselor Rose Smith. Ms. Smith recounted that defendant “has a history of violence,” that he “continued to be violent while in the Siskiyou County jail,” and that “his history indicates he is a risk to others.” As to defendant’s history of trauma or exposure to trauma, Ms. Smith stated that defendant was neglected by his mom, separated from his dad as a child, and shot in the neck in 2013. The 2013 shooting causes “constant trauma,” including medical trauma: He was in a coma for 21 days, could not move for two months after the coma, had a stroke that still impacts his left side, and his memory was impacted.

Ms. Smith reported that defendant described one of his assaults as a response to being bullied. Specifically, defendant stated that “every time he saw [the victim], [the victim] would bully him and take his stuff” and that defendant “was still messed up from getting shot” and “was sensitive from getting attacked.” Defendant said he ran from the

3

police the next day "because he was thinking that the cops would try to kill him." As to defendant's assaults while in jail, defendant reported that (1) he and another cellmate got into a fist fight after "his cellmate stole a candy bar" and (2) another fist fight occurred when another guy told him that "he needed to start giving him his medication."

Ms. Smith diagnosed defendant with both PTSD and antisocial disorder. As to PTSD, she reported that "when he was [shot][1] he had the threat of death, he directly experienced the event. He continues to have intrusive symptoms, having recurrent nightmares about the event. . . . He has alterations in arousal and reactivity associated with the event, including hypervigilance, exaggerated startle response. He has experienced these symptoms since he was [shot] in 2013." As to the antisocial disorder, Ms. Smith stated that defendant "has had a failure to conform to social norms with respect to lawful behaviors, as indicated by repeatedly performing acts that are grounds for arrest" and "indicated by causing bodily injury on another inmate while in jail."

Ms. Smith stated that defendant was "currently getting [mental health] treatment," including "therapy every two weeks" and "medication every few months." According to Ms. Smith, defendant appeared to be "doing well in the structured environment of pelican bay prison" and is "engaged in group activities there." She recommended that he "continue with his treatment" and responded, "Yes" to whether defendant has a significant impairment and to whether he would benefit from the proposed intervention by significantly diminishing the impairment. In a document entitled "Mental Health Diversion Psychological Assessment Summary," Ms. Smith responded, "No" to the question, "Does the Defendant's mental health diagnosis appear to be related to the crime he/she has been charged with?" She also selected "No" to the question, "Would the

---

[1]     The People do not dispute that Ms. Smith mistakenly referred to the 2013 shooting as a stabbing.

4

defendant's mental disorder symptoms, that motivated the criminal behavior, respond to mental health treatment?"

In July 2022, the court denied the diversion petition. The court reasoned that while defendant's PTSD was a qualifying offense under the statute, there was not "that nexus, the significant factor between the [PTSD] and the criminality." Defendant timely appealed.

DISCUSSION

Section 1001.36 was enacted in 2018 and "authorizes pretrial diversion for defendants with qualifying mental disorders." (*People v. Braden* (2023) 14 Cal.5th 791, 801.) Such qualifying disorders include, but are not limited to, "bipolar disorder, schizophrenia, schizoaffective disorder, or [PTSD]." (§ 1001.36, subd. (b)(1).)[2] "If mental health diversion is granted and the defendant satisfactorily completes the court's approved mental health treatment program, then the defendant's criminal charges are required to be dismissed and the defendant's arrest on the charges 'shall be deemed never to have occurred.' " (*People v. Gerson* (2022) 80 Cal.App.5th 1067, 1078.)

When defendant was sentenced, the 2022 version of section 1001.36 authorized a trial court to grant diversion if the following criteria were met, among others: (1) the court was satisfied that the defendant suffered from a mental disorder; (2) the court was satisfied that the disorder was a significant factor in the commission of the charged offense; and (3) in the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder motivating the criminal behavior would respond to mental health treatment. (Former § 1001.36, subd. (b)(1)(A)–(F).)

---

[2] Although there are three excluded disorders, including antisocial personality disorder, section 1001.36 does not preclude from diversion defendants who suffer from both excluded and included mental health disorders. (*Negron v. Superior Court* (2021) 70 Cal.App.5th 1007, 1009.)

The 2023 version of section 1001.36 provides a two-step review for pretrial diversion petitions.  (§ 1001.36, subds. (b), (c).)  Under step one, the court must find a defendant eligible for pretrial diversion if (1) the defendant has been diagnosed with a qualifying mental disorder(s), and (2) the defendant's mental disorder(s) was a significant factor in the commission of the charged offense.  (§ 1001.36, subd. (b).)  When making this decision, the court *must* find the significant factor element satisfied "unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense."  (§ 1001.36, subd. (b)(2).)

If the defendant passes step one, the trial court proceeds to step two, where it must consider whether the defendant is suitable for diversion.  (§ 1001.36, subd. (c).)  A defendant is suitable when, among other requirements, a qualified mental health expert opines that "the defendant's symptoms of the mental disorder causing, contributing to, or motivating the criminal behavior would respond to mental health treatment."  (§ 1001.36, subd. (c)(1); "the mental health treatment requirement.")

While the People concede that the 2023 version of section 1001.36 applies retroactively to Schweitzer's nonfinal judgment (*Doron, supra*, 95 Cal.App.5th at p. 6), they contend remand would be futile because, under *People v. Watson* (1956) 46 Cal.2d 818, it is reasonably probable the trial court would have denied defendant's petition under the 2023 version of section 1001.36.  But defendant contends remand is necessary because the record does not "clearly indicate" that the trial court would have reached the same conclusion had it been aware of its discretion under the 2023 version of section 1001.36, invoking *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.  (See *Doron* at p. 10 [applying "clearly indicates" standard to appeal seeking remand under 2023 version of section 1001.36].)  Without deciding which standard applies, we conclude remand is required even under the more stringent *Watson* standard.

6

A trial court's ruling on a request for mental health diversion is reviewed for abuse of discretion. (*People v. Moine* (2021) 62 Cal.App.5th 440, 448-449.) Such abuse occurs if the court bases its decision on an incorrect legal standard. (*People v. Carmony* (2004) 33 Cal.4th 367, 378.) Under the 2023 version of section 1001.36, the People bear the burden of rebutting the *presumed eligibility* of all qualifying mental disorders through *clear and convincing evidence* that no nexus exists between defendant's PTSD and the offenses. (§ 1001.36, subd. (b)(2).) Here, the trial court technically erred by not applying this presumption and clear and convincing evidence standard, which was not yet in place. Ms. Smith's statements regarding defendant's PTSD, specifically his "alterations in arousal and reactivity associated with [the 2013 stabbing], including hypervigilance, exaggerated startle response," which he experienced since the 2013 shooting, supported defendant's presumed eligibility. The only evidence to the contrary was Ms. Smith's one-word answer regarding the connection between defendant's disorders and his offenses. We are not persuaded it is reasonably probable the trial court would have found this answer to be clear and convincing evidence showing no nexus between defendant's PTSD and his offenses.

The People's reliance on the mental health treatment requirement does not change our conclusion. The People contend that because Ms. Smith concluded that defendant's PTSD was unrelated to his charged criminal conduct, his symptoms could not have caused, contributed to, or motivated criminal behavior that would respond to treatment. But the People conflate the mental health treatment requirement, in step two of the diversion analysis, with the threshold requirement that the disorder be a significant factor in the commission of the offense.

As stated *ante*, we cannot conclude that the trial court would have found clear and convincing evidence to overcome the significant factor presumption. And the People do not contend that Ms. Smith concluded defendant's PTSD symptoms would not respond to treatment. In fact, Ms. Smith reported: (1) defendant is "currently getting [mental

7

health] treatment" and "appears to be doing well in the structured environment of pelican bay prison"; (2) she recommends that he continue with this treatment; and (3) defendant would "benefit from the proposed intervention by significantly diminishing the impairment."  Thus, we reject the People's contention grounded in the mental health treatment requirement.

Because we remand for a new mental health diversion eligibility hearing under the 2023 version of section 1001.36, we do not reach defendant's alternative contention that trial court erred under the 2022 version of section 1001.36.  We also express no view concerning the ultimate outcome of defendant's application, nor do we intend to preclude the trial court from considering any subsequent evidence that may come to light on the relevant factors of eligibility or suitability.

## DISPOSITION

We reverse the order denying defendant's motion for mental health diversion and remand the matter with directions that the trial court conduct a new hearing to consider his application for mental health diversion under section 1001.36 as amended by Senate Bill No. 1223 (2021-2022 Reg. Sess.).

 

/s/ _____
MESIWALA, J.

We concur:

/s/ _____
MAURO, Acting P. J.

/s/ _____
RENNER, J.